**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA              :
                                      :
     -against-                        :      No. 91 Cr. 83 (JFK)
                                      :
DOMINGO PIMENTEL,                     :      **OPINION & ORDER**
                                      :
               Defendant.             :
------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/14/2020

APPEARANCES

FOR DEFENDANT DOMINGO PIMENTEL:
    Pro Se

FOR THE UNITED STATES OF AMERICA:
    Kaylan E. Lasky
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a pro se motion by Defendant Domingo Pimentel seeking a sentence reduction due to Pimentel's age (he is 67), preexisting medical conditions, and the COVID-19 pandemic. Pimentel brings the motion pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A) ("the Act"), commonly known as the compassionate release statute. The Government opposes Pimentel's motion as procedurally barred because he did not satisfy the Act's administrative exhaustion requirements before seeking judicial intervention, and substantively meritless because Pimentel's medical conditions, the circumstances of his incarceration, and the 18 U.S.C. § 3553(a) sentencing factors do not warrant a modification to his term of imprisonment. For the reasons set forth below, Pimentel's motion is DENIED.

**I.  Background**

Unless otherwise noted, the following is taken from the materials the parties submitted and the Court's 1998 decision denying Pimentel's request for habeas relief pursuant to 28 U.S.C. § 2255. See Pimentel v. United States, No. 91 Cr. 83 (JFK), 1998 WL 50142 (S.D.N.Y. Feb. 9, 1998).  In ruling on Pimentel's compassionate release request, the Court has considered the arguments advanced in Pimentel's pro se motion, (ECF No. 27), the Government's opposition, (ECF No. 30), and Pimentel's reply, (ECF No. 31).

On August 2, 1991, Pimentel was convicted by a jury of (1) interfering with the federally protected activities of a government informant by killing him, in violation of 18 U.S.C. § 245(b)(1)(B) ("Count I"); (2) retaliating against the same informant by killing him, in violation of 18 U.S.C. § 1513(a)(2) ("Count II"); and (3) bail jumping, in violation of 18 U.S.C. § 3146 ("Count III"). See Pimentel, 1998 WL 50142, at *1.

The charges stemmed from Pimentel's brutal murder of Juan Andres Guerrero-Gonzalez, an informant for the Secret Service who identified Pimentel and his common-law wife, Ronna Deziel, as potential sources of counterfeit currency. See id.  Pimentel and Deziel were arrested in August 1988, during which the Secret Service recovered approximately $105,000 in counterfeit currency from the trunk of Pimentel's car. See id.  Pimentel and Deziel

2

were released on bail in September 1988, and on November 1, 1988, they both pleaded guilty to dealing in counterfeit obligations of the United States, in violation of 18 U.S.C. § 473. See id.  Following their guilty pleas, Pimentel and Deziel were continued on bail and were ordered to appear for sentencing in January 1989. See id.

On November 2, 1988—the day after they pleaded guilty—Pimentel and Deziel traveled to a neighborhood in the Bronx where relatives of Pimentel lived and where the two often visited before their arrest on the counterfeiting charges. See id. at *2.  That afternoon, Pimentel saw Guerrero-Gonzalez talking with an individual in front of a building. See id.  Pimentel retrieved a baseball bat from the trunk of another person's car and, in front of at least two witnesses, ran up behind Guerrero-Gonzalez, took up a batter's stance, and struck Guerrero-Gonzalez in the back of the head with the bat.  See id. at *2, *3.  Guerrero-Gonzalez fell to the ground, his hands never leaving his pockets, after which Pimentel stood over his body and continued to hit his head with the bat approximately 15-20 more times. See id. at *3.  Pimentel fled, and that evening he and Deziel took a bus from Manhattan to Rhode Island. See id. at *2, *3.  Guerrero-Gonzalez was pronounced dead; virtually every bone in his face and skull had been shattered by the beating. See id. at *3.  On June 22, 1990, Pimentel was

3

located and arrested by Secret Service agents in San Juan, Puerto Rico. See id.

On December 5, 1991, the Court sentenced Pimentel to life imprisonment on Count I, and to a concurrent term of ten years' imprisonment on Count II. See id. at *1. On Count III, the Court sentenced Pimentel to fifteen months' imprisonment, to run consecutively to the sentences imposed on Counts I and II. See id. To date, Pimentel has served approximately 30 years of his life sentence.

On June 8, 2020, Pimentel, proceeding pro se, filed a motion requesting a reduction in sentence and his immediate compassionate release due to the COVID-19 pandemic. (ECF No. 27.) Pimentel's motion explained that he suffered from a variety of medical conditions, including hyperlipidemia (high cholesterol) and bradycardia (slow heartbeat), and he was deeply worried about his health should he contract the virus. On June 9, 2020, the Court ordered the Government to respond, and on June 23, 2020, the Government opposed Pimentel's request on the grounds that he had failed to first seek compassionate release from the Warden of his facility and, even if he had, no compelling and extraordinary reasons support his release, which would be inappropriate under the sentencing factors set forth in 18 U.S.C. § 3553(a). (ECF No. 30.) Pimentel submitted a reply brief on August 5, 2020. (ECF No. 31.)

**II. Discussion**

    **A. Legal Standard**

18 U.S.C. § 3582(c)(1)(A) allows a court to modify a term of imprisonment "upon motion of the defendant" provided the defendant has exhausted certain administrative requirements. 18 U.S.C. § 3582(c)(1)(A).  Under these circumstances, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A)(i).  In doing so, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. § 3582(c)(1)(A).  "Application of the § 3553(a) factors requires an assessment of whether the relevant factors 'outweigh the "extraordinary and compelling reasons" warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence.'" United States v. Daugerdas, --- F. Supp. 3d ---, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations in original) (quoting United States v. Ebbers, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020)).

The Second Circuit recently ruled that the policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release, section 1B1.13 of the Sentencing

Guidelines, "is not 'applicable' to compassionate release motions brought by defendants," and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." United States v. Brooker, --- F.3d ---, No. 19-3218-CR, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020).  Accordingly,

> when assessing a motion brought directly by an imprisoned person rather than by the BOP, the Court is constrained neither by [§] 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community.  Rather, the Court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release."  However, even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable."

United States v. Harris, No. 15 Cr. 445 (PAE), 2020 WL 5801051, at *2 (S.D.N.Y. Sept. 29, 2020) (footnote and internal citations omitted).  "[P]ro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

### B.  Analysis

The Court is sympathetic to the heightened risk certain individuals face from COVID-19.  See People at Increased Risk, Ctrs. for Disease Control & Prevention,

6

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited October 13, 2020); see also United States v. Park, --- F. Supp. 3d ---, No. 16 Cr. 473 (RA), 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020) ("The nature of prisons—crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products—put those incarcerated inside a facility with an outbreak at heightened risk.") (collecting sources).  And, on at least one occasion, it has ruled that the threat posed by the COVID-19 pandemic to a medically "high-risk" individual constitutes "extraordinary and compelling reasons" to warrant immediate compassionate release. See United States v. Smith, 454 F. Supp. 3d 310, 315 (S.D.N.Y. 2020) (granting release to non-violent 62-year-old with multiple physical ailments); but see United States v. Seshan, No. 14 Cr. 620 (JFK), 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020) (denying release to 47-year-old despite his "end-stage renal failure and hypertension" and the threat of COVID-19 because, inter alia, defendant had a history of violence and granting the motion would disserve important 3553(a) sentencing factors).

　　Nevertheless, in this case, even if Pimentel could demonstrate administrative exhaustion and that his age, health risks, and the COVID-19 pandemic provide extraordinary and compelling reasons for a sentence reduction, application of the

7

3553(a) factors cripples his request and outweighs any justification for early-release.  Here, the factors that weigh in Pimentel's favor, such as the need to provide necessary medical care, are overshadowed by the combined force of "the nature and circumstances of the offense" and the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).  Indeed, Pimentel's offense conduct is among the most serious and reprehensible the Court has ever encountered: Pimentel deliberately and brutally murdered a government informant by sneaking up behind the victim and striking him multiple times in the head with a baseball bat, breaking nearly every bone in the victim's face and skull.  For the reasons stated in detail at Pimentel's sentencing, which are incorporated by reference here, the Court finds that modifying Pimentel's term of imprisonment would disserve the above important sentencing factors. Cf. Seshan, 2020 WL 2215458, at *5; United States v. Montevecchi, 18 Cr. 15 (AKH), 2020 WL 3051335, at *2 (S.D.N.Y. June 8, 2020) (denying release to 74-year-old defendant with heart disease and other conditions); United States v. Lika, No. 84 Cr. 499 (CS), 2020 WL 2766049, at

*3 (S.D.N.Y. May 28, 2020) (same for 70-year-old serving a life sentence who had cancer and other conditions). Accordingly, Pimentel's motion is denied on the merits, and the Court need not resolve whether the motion is procedurally proper.

### III. Conclusion

For the reasons set forth above, Defendant Domingo Pimentel's motion for a reduction in sentence is DENIED.

The Clerk of Court is directed to terminate the motion docketed at ECF No. 27.

**SO ORDERED.**

Dated:   New York, New York
         October 14, 2020

_____
John F. Keenan
United States District Judge